**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **AUDREY COLEMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| vs. | ) No. 3:12-CV-04783-M-BH |
| | ) |
| **BANK OF NEW YORK MELLON et. al,** | ) |
| | ) |
| **Defendants.** | ) |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order No. 3-251, this case has been automatically referred for pretrial management. Before the Court for recommendation is *Plaintiff's Application for Temporary Restraining Order and Temporary Injunction*, received February 27, 2013 (doc. 37). Based on the relevant filings and applicable law, Plaintiff's application should be **DENIED**.

**I. BACKGROUND**

This case arises from the foreclosure of real property located at 623 Sotogrande Street, Grand Prairie, Texas, 75051 (the Property). (*See* doc. 3 at 3.) On November 21, 2012, Audrey Coleman (Plaintiff) filed this *pro se* suit against Bank of New York Mellon, as trustee for the Certificateholders of CWABS, Inc., Asset-backed Certificates, Series 2007-6 (Mellon), Bank of America, N.A. (BOA), Mortgage Electronic Registration Systems, Inc. (MERS), Recontrust Company, N.A. (Recontrust), Gabriel Ozel and Pite Duncan, LLP (Pite Duncan), Blank Rome Counselors at Law, LLP (Blank Rome), and Prudential Lone Star Realtors/Pat Watson-Capps, C.R.S. (Prudential) (collectively, Defendants). (*See id.* at 1–3.) She asserts claims for violations of § 12.002 of the Texas Civil Practice and Remedies Code; unjust enrichment; negligent misrepresentation; fraudulent misrepresentation; slander of title/petition to quiet title; violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692; violations of the Real Estate

Settlement Procedure Act (RESPA), 12 U.S.C. § 2601 *et seq.*; and negligent supervision. (*Id.* at 15–20.) She also appears to assert claims for wrongful foreclosure, wrongful eviction, and violations of the Truth in Lending Act, the Federal Trade Commission Act, and the Fair Credit Reporting Act. (*See id.* at 12–14, 19.) She currently seeks to "restrain" Defendants "from forcibly seizing the Property." (doc. 37 at 10.)

## II. TEMPORARY RESTRAINING ORDER

A party may obtain a TRO without notice to the other side if it satisfies the necessary requirements, which are:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). The party seeking a TRO has the burden to show entitlement to it. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

Plaintiff does not allege she has given notice to Defendants of her request for injunctive relief, nor has she provided a written certification of her efforts to give notice or proffering reasons why notice should not be required. Neither her complaint nor her application for injunctive relief clearly show an immediate, irreparable injury, loss, or damage that will result before Defendants can be heard in opposition. Her motion is subject to denial for this reason alone.

In addition, "[t]o obtain a temporary restraining order, [Plaintiff] must show entitlement to a preliminary injunction." *Mktg. Investors Corp. v. New Millennium Bank*, No. 3:11-CV-1696-D, 2011 WL 3157214, at *1 (N.D. Tex. July 26, 2011) (Fitzwater, C.J.) (citations omitted). As discussed below, she has not made this showing.

2

## III. PRELIMINARY INJUNCTION

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 129 S.Ct. 365, 376 (2008). To obtain a preliminary injunction, the movant must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Tex. Midstream Gas Servs., LLC. v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) (citing *Winter*, 129 S.Ct. at 374). The party seeking the preliminary injunction bears the burden of persuasion on all four requirements. *Bluefield Water Assoc., Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009).

### A. **Likelihood of Success**

To establish a likelihood of success on the merits, a "plaintiff must present a prima facie case but need not show that he is certain to win." *Janvey v. Alguire*, 628 F.3d 164, 175 (5th Cir. 2010). This element is assessed by looking at standards provided by substantive law. *Id.* (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)).

#### *1. "Show-me-the-Note" Theory*

Plaintiff alleges that "[i]n order to enforce a debt obligation secured by a mortgage and note, a party must be in possession of the ... original wet ink signature note." (doc. 3 at 6.) She alleges that MERS "ha[d] no legal standing or right" to foreclose because "no evidence exist[ed] to support the claim that MERS is or was ever the holder in due course of the Note." (*Id.* at 8.) She also claims that because the note was separated from the deed of trust and "became part of a pool of mortgages," it "no longer [was] a negotiable instrument" and the assignment of the deed of trust alone was a

"nullity." (*Id.* at 8–9.)

Plaintiff's allegations that MERS lacked authority to foreclose because it was not the holder in due course of the note implicates what is commonly referred to as the "show-me-the-note" theory. *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *recommendation adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012). "Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (citation and internal quotation marks omitted). The theory has been repeatedly rejected in this circuit. *Bennett*, 2012 WL 2864751, at *3; *see also Cervantes v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (Fitzwater, C.J.) (collecting cases).[1]

"Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011). Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property." *Bierwirth*, 2012 WL 3793190, at *3 (citation omitted). In cases where the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument." *Millet v. JP Morgan Chase, N.A.*, No. SA-11-

---

[1] Plaintiff's allegation that the deed of trust was rendered void and unenforceable due to its severance from the note implicates the "split the note" or "bifurcation" theory. *See Islamic Ass'n of DeSoto, Texas, Inc. v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-0613-D, 2012 WL 2196040, at *3 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.) (explaining that the plaintiff's "split the note" theory was based on its argument that because "MERS never held the Note ... its assignment of the Deed of Trust ... ha[d] no force or effect"); *see also Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.) ( "[The] bifurcation theory originates in the concept that a note has no separate existence from its security, and an assignment of the security alone is a nullity.") This theory appears to be a variation of the "show-me-the-note" theory, as it claims that possession of the note is a prerequisite to foreclosure.

4

CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012). By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note." *Reardean*, 2011 WL 3268307, at *3.[2]

Courts in this Circuit have held that the Texas Property Code does not require a mortgagee to possess the promissory note or deed of trust before conducting a non-judicial foreclosure sale. *Bennett*, 2012 WL 2864751, at *3; *see also Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *1, n. 1 (5th Cir. Mar. 28, 2011) (per curiam)(citing to Tex. Prop. Code §§ 51.002 & 51.0025). The Code defines mortgagee as "the grantee, beneficiary, owner, or holder of a security instrument," or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Tex. Prop. Code Ann. § 51.0001(4)(A),(C) (West 2007).

Here, the deed of trust named MERS as the beneficiary under the deed of trust, making it the original mortgagee. *See* Tex. Prop. Code § 51.0001(4)(A); (doc. 37 at 12.) As mortgagee, MERS could foreclose on the Property without needing to produce the original note. *See Bennett*, 2012 WL 2864751, at *3. Accordingly, Plaintiff's allegation that MERS could not foreclose without producing the note cannot support any claim against MERS or any other Defendant as a matter of law. *See Islamic Ass'n*, 2012 WL 2196040, at *2. To the extent that she bases any of her claims on this invalid "show-me-the-note" theory, they all fail as a matter of law and she therefore cannot prove any likelihood of success on merits.

---

[2] Plaintiff essentially contends that"[o]nce the loan was sold and securitized," Defendants lost their rights to enforce it through foreclosure pursuant to "the Uniform Commercial Code." (doc. 3 at 5.) Her reliance on the UCC is misplaced because foreclosure is conducted pursuant to the deed of trust, which is a contract and not a negotiable instrument. *See* Tex. Bus. & Com. Code Ann. §§ 3.201, 3.203,and 3.204 (West 2002) (providing the requirements for the negotiation, transfer, and endorsement of a negotiable instrument); *see also Kramer v. Fannie Mae*, No. A–12–CA–276–SS, 2012 WL 3027990, at *7 (W.D. Tex. May 15, 2012) (explaining that "the authority to conduct a foreclosure under Texas law is governed by an entity's relationship to the deed of trust, rather than the associated note").

### *2. MERS's Assignment of the Note*

Plaintiff also alleges that MERS could not foreclose because she "never executed a Note naming MERS as a Party." (doc. 3 at 7, 8.) She claims that when the note "was assigned from the REMIC to Fannie Mae, it passed through MERS [but] MERS had no right or authority to assign [it]", so any assignment of the note was therefore "null and void." (*Id.*)

Plaintiff's assertions regarding MERS' role in any assignment fail for several reasons. As discussed, MERS was the original mortgagee, and the deed of trust also identified it as the nominee for the Lender and its successors and assigns. (*See* doc. 37 at 12.) As the beneficiary of the deed of trust, MERS held legal title to the Property and had the right to foreclose and sell the Property upon default. (*See id.* at 13.) Consequently, MERS had the inherent authority to assign the note and deed of trust. *See Lamb v. Wells Fargo Bank, N.A.*, No. 3:12-CV-00680-L, 2012 WL 1888152, at *5 (N.D. Tex. May 24, 2012). Any assignment by MERS was therefore valid and any assignee became the new mortgagee and acquired all of MERS's rights. *See Warren v. Bank of Am.,* N.A., No. 3:11-CV-3603-M, 2012 WL 3020075, at *4 (N.D. Tex. June 19, 2012), *recommendation adopted*, 2012 WL 3024746 (N.D. Tex. July 24, 2012) (finding that upon the assignment of the deed of trust from MERS to the defendant, the defendant "and its successors acquired [MERS's] rights to sell and foreclose on the property"); *Lamb*, 2012 WL 1888152, at *5; *Dempsey v. U.S. Bank Nat'l*, No. 4:10-CV-679, 2012 WL 2036434, at *5 (E.D. Tex. Jun. 6, 2012) (citation omitted). While it is not clear from her complaint, to the extent that Plaintiff bases any of her claims on MERS's purported lack of authority to assign the note, she fails to establish any likelihood of success on the merits because the claims fail as a matter of law.

### 3. *Securitization of the Note*

Plaintiff claims that the promissory note she executed was "never intended" to be a negotiable instrument, but instead "became part of a pool of mortgages, losing its individual identity as a Note between a Lender and a Borrower." (doc. 3 at 7.) The note was separated from the deed of trust and pooled with similar debt pursuant to a pooling and servicing agreement and transferred into an assert-backed trust, for the purpose of creating residential mortgage-backed securities that were later "sold on Wall Street." (*Id.* at 5–8.) She essentially argues that the transfer of the mortgage into the trust extinguished the rights of any and all parties to the note and the note became "at best ... an unsecured debt instrument." (*Id.* at 5.) Accordingly, the "proper Parties to this action would be the investors of the mortgage-backed securities to which [her] loan was securitized; but [they] have no recorded interest in the mortgage."[3] (*Id.* at 7.)

Plaintiff's filings do not even allude to any legal authority supporting her theory that the securitization of the debt rendered the note "unsecured" and the deed of trust unenforceable. Several courts that have considered the theory have found it without any legal basis. *See e.g.*, *Warren*, 2012 WL 3020075, at *6 (rejecting arguments by the borrower that securitization of his loan rendered his note unenforceable); *Wittenberg v. Wells Fargo Bank, N.A.*, No. 3:10-CV-58, 2012 WL 443781, at *19 (N.D. W. Va. Feb. 10, 2012) (same); *Lamb*, 2012 WL 1888152, at *5 (finding the borrower's argument that a pooling and servicing agreement prevented assignment of his mortgage meritless; explaining that any transfer of the mortgage into a trust did not affect MERS' authority as the lender's nominee and beneficiary to sell, transfer, assign, or foreclose on the property ). To the

---

[3] To the extent that Plaintiff alleges that a mortgage must be recorded to be enforceable, this allegation fails because "recordation is not necessary for liens, deeds, or deeds of trust to be enforceable against the parties to those instruments." *Bennett*, 2012 WL 2864751, at *4 (citations omitted).

7

extent that Plaintiff relies on this theory, it cannot support a "likelihood of success" of any claim.

### 4. FDCPA

The FDCPA prohibits a "debt collector" from: 1) using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" or 2) using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692e-f. A "debt collector" is also required to provide a proper validation notice of a consumer's rights and to refrain from engaging in collection activities or communications which "overshadow" or are "inconsistent with the disclosure of the consumer's right to dispute the debt" within the 30-day window for disputing a debt. 15 U.S.C. § 1692g(a) and (b).

A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The statute sets forth two categories of debt collector – those who collect debts as the "principal purpose" of their business and those who collect debts "regularly." *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008). "A person may 'regularly' collect debts even if debt collection is not the principal purpose of his business." *Id*. "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities." *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007). *See also Garrett v. Derbes*, 110 F.3d 317 (5th Cir. 1997).

Here, Plaintiff conclusorily characterizes Recontrust as a debt collector. (*See* doc. 3 at 10.) She also states that she "is holding [BOA], Recontrust, [and] the other Defendants" "responsible for [her] damages," but she does not show that any Defendants is either engaged "in any business the

8

principal purpose of which is the collection of any debts" or that they "regularly collect or attempt to collect . . . debts." (*See id.*) While she alleges that Recontrust gave her "conflicting information regarding the statuses [*sic*] of her property getting pulled off [the] foreclosure list" and that Defendants falsely claimed to be "the lawful owners in interest of the debt," filed "an unlawful foreclosure action," and "threatened to unlawfully repossess the Property," she does not show how these actions constitute "false, deceptive, or misleading representations or means in connection with the collection of any debt;" use of "unfair or unconscionable means to collect or attempt to collect any debt;" a failure to provide a proper validation notice of her rights as a consumer; or a failure to refrain from engaging in collection activities or communications which "overshadowed" or were "inconsistent with the disclosure of [her] right to dispute the debt." *See* 15 U.S.C. §§ 1692(e) and 1692(g)(a) and (b). She must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" in order to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Because she has not done so in this case, she has failed to establish any likelihood of success on the merits of her claim under the FDCPA.[4]

### 5. RESPA

Section 6 of the Real Estate Settlement Practices Act (RESPA) imposes two notice requirements in connection with "federally related mortgage loan[s]." *Hoover v. Wisecarver*, No. 3:03CV700JS, 2006 WL 2583735, at *3 (S.D. Miss. Sept. 7, 2006) (citing 12 U.S.C.A. § 2605 (West

---

[4] Plaintiff lists a claim for "false, deceptive, or misleading representations," alleging that Defendants "made a false, deceptive, and misleading representation in ... connection with the foreclosure ... in violation of 15 U.S.C. § 1692(e)." (doc. 3 at 20.) Although listed as a separate claim, these allegations are part of her FDCPA claim. (*See id.* at 18.)

9

2011). First, at the time of application, the lender must disclose to the borrower that servicing of the loan may be "assigned, sold, or transferred to any other person at any time while the loan is outstanding." *Id.* (citing 12 U.S.C. A. § 2605(a)). Second, a servicer must notify the borrower "of any assignment, sale or transfer of the servicing of the loan to any other person." *Id.* (citing 12 U.S.C. § 2605(b)).

Plaintiff alleges that she was never "notified or informed of a transfer of the Note to MERS," and that Defendants failed to "timely inform" her of "any alleged Appointments, Assignments, and Transfers of the mortgage in violation of RESPA." (doc. 3 at 7, 19.) First, the note was never transferred to MERS because, as discussed, MERS was the original mortgagee. Ultimately, because her conclusory allegations read more like a recitation of the elements of a RESPA violation than specific allegations of wrongdoing, and because she does not provide any evidence to support them, she fails to meet her burden of establishing an entitlement to injunctive relief.

### 6. *Fraudulent Lien*

Chapter 12 of the Texas Civil Practices and Remedies Code provides the elements of a claim for the filing of a fraudulent lien. *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 3671–72 (5th Cir. 2012). The Code provides in relevant part:

> A person may not make, present, or use a document or other record with:
> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
> (3) intent to cause another person to suffer:
> (A) physical injury;
> (B) financial injury; or

10

(C) mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a) (West 2005).

Here, Plaintiff avers only that Defendants knowingly "utilized" documents that were "fraudulent." (doc. 3 at 15.) She fails to identify the documents that were allegedly "fraudulent," and fails to show Defendants intended that such documents have the "same legal effect as a valid lien." Likewise, she does not show that Defendants intended to injure her or cause her mental anguish or emotional distress. In short, she fails to establish a likelihood of success on the merits.

### 7.  *Unjust Enrichment*

In Texas, "there can be no recovery for unjust enrichment under a quasi-contract or contract implied-in-law theory when a valid, express contract covers the subject matter of the parties' dispute." *Patterson v. Long Beach Mortg. Co.*, No. 3:07-CV-1602OBH, 2009 WL 4884151, at *8 (N.D. Tex. Dec. 15, 2009) (citations omitted). There is an express contract in this case—the mortgage that Plaintiff admits she obtained to purchase the Property. (docs. 3 at 3; 37 at 12, 27.) Any claim for unjust enrichment against Defendants therefore fails as a matter of law and Plaintiff cannot prove a likelihood of success on the merits.

### 8.  *Negligent Misrepresentation*

A claim for negligent representation in Texas consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Chance v. Aurora Loan Services, L.L.C.*, No. 3:11-CV-1237-BH, 2012 WL 912939, at *5 (N.D. Tex.

11

Mar. 19, 2012) (citing *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005) and *Nazareth Int'l. Inc. v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas 2009, pet. denied)).

Plaintiff alleges that Defendants intentionally instituted "an unlawful foreclosure" based on "fraudulent documents" and misrepresentations, including "the true identity of Lender," and she was reasonably induced "to enter into the transaction." (doc. 3 at 16.) These bare allegations read like a recitation of the elements of the claim and fails to prove her entitlement to injunctive relief.

### 9. *Fraudulent Misrepresentation*

In Texas, the elements of fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010).

Plaintiff contends that Defendants "fraudulently misrepresented [being] the true beneficial owner[s] of [her] Note," "perpetuat[ed] a fraudulent foreclosure," and their "fraudulent misrepresentations" were "a proximate cause of [her] damages." (doc. 3 at 17.) These conclusory allegations fail to meet the *Iqbal* pleading standards, let alone show that Plaintiff is likely to succeed on the merits of her fraud claim.

### 10. **Slander of Title**

In Texas, to prevail on a slander of title claim, the plaintiff must allege and prove: "(1) the utterings and publishing of disparaging words; (2) that they were false; (3) that they were malicious;

(4) that special damages were sustained thereby; and (5) that the plaintiff possessed an estate or interest in the property disparaged." *Manders v. Manders*, 897 F. Supp. 972, 976 (S.D. Tex. 1995) (citations omitted).

Plaintiff alleges that the "recording of the mortgage published the information to third parties" and Defendants' "wrongful publication of an ownership interest in [her] property" caused her damages and she "will continue to incur costs related to this litigation." (doc. 3 at 17.) She does not allege any facts or provide any evidence supporting the elements of this claim. She has therefore failed to show a likelihood of success on the merits.

### 11.    *Quiet Title*

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted). To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.). The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied). The plaintiff must prove and recover on the strength of his own title, not on the weakness of his

13

adversary's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Plaintiff alleges that she is "the Superior Owner" and "legal Titleholder" of the Property and Defendants "knowingly and unlawfully caused a cloud to be recorded against" it. (doc. 3 at 17.) Additionally, any "purported transfer" of the Property was "wrongful and invalid because the endorsements, assignments, and foreclosure [were] invalid and not ... in accordance with" Texas law. (*Id.*) These vague and conclusory allegations fail to establish the elements of a viable claim; she therefore fails to establish a likelihood of success on the merits.

### 12. *Negligent Supervision*

Under Texas law, the elements of a cause of action for negligently supervising an employee are: (1) the employer owed the plaintiff a legal duty to supervise the employees, (2) the employer breached that duty, and (3) the breach proximately caused the plaintiff's injury. *Allison v. J.P. Morgan Chase Bank, N.A.*, No. 1:11-CV-342, 2012 WL 4633177, at *16 (E.D. Tex. Oct. 2, 2012) (citations omitted).

Here, Plaintiff claims that "Defendants had a duty" to supervise their employees and agents; the employees' actions were "unlawful and violated" her property rights; Defendants knew or "should have known" their employees were acting unlawfully; and she was "proximately injured" by the employees' unlawful actions. (doc. 3 at 19.) These unsupported, conclusory statements are insufficient to demonstrate entitlement to the extraordinary relief of a TRO and preliminary injunction.[5]

---

[5] Plaintiff also asserts a claim for violations of her civil rights under 42 U.S.C. § 1983; this action was dismissed with prejudice. (*See* doc. 25.) It also appears that she asserts claims for violations of the Truth in Lending Act, the Federal Trade Commission Act, and the Fair Credit Reporting Act, as well as for wrongful foreclosure and wrongful eviction. (*See* doc. 3 at 12–14, 19.) She refers to these claims only by their title and fails to allege any facts to support their

**B.     Irreparable Harm**

To satisfy the second element of the preliminary injunction standard, the plaintiff must show "that if the district court denied the grant of a preliminary injunction, irreparable harm would result." *Janvey*, 647 F.3d at 600 (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). Injuries are irreparable only when they "cannot be undone through monetary remedies." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (citation omitted).

Plaintiff alleges that she has "no adequate remedy at law" because of the "uncertain nature of [her] damages." (doc. 37 at 8.) Additionally, a "claim for wrongful foreclosure would not make [her] whole again," and if "Defendant simply sold [the Property] for a price around fair market value," she "could not establish" this cause of action. (*Id.*) These allegations do not establish Plaintiff will suffer irreparable harm if her application is denied.

**C.     Balance of Equities**

The third element requires a preliminary injunction applicant to show that the threatened injury outweighs any harm the injunction might cause. *See Winter*, 555 U.S. at 23. Plaintiff avers only that the "risk of irreparable injury to [her] outweighs the risk of harm to Defendant[s] should [her] application be granted." (doc. 37 at 8.) This allegations do not establish the third element required to obtain relief.

**D.     Public Interest**

Finally, the fourth element requires a preliminary injunction applicant to show that the injunction is in the public interest. *Winter*, 555 U.S. at 20. Plaintiff makes no allegations with respect to this element. (*See* doc. 37.)

---

elements. (*See id.*) To the extent that she asserts these claims, she fails to prove any likelihood of success on the merits.

...


In conclusion, Plaintiff's unsupported, conclusory statements, even though verified under oath, are not sufficient to show entitlement to preliminary injunctive relief. *See Preston v. Seterus, Inc.*, 3:12-CV-2395-L, 2012 WL 3848122, at *3 (N.D. Tex. Sept. 5, 2012) (citing *Hunt v. Bankers Trust Co.*, 646 F. Supp. 59, 66 (N.D. Tex. 1986). She has failed to carry her burden of showing why a termporary restraining order or a preliminary injunction should issue in this case.

## IV. RECOMMENDATION

Plaintiff's motion should be **DENIED**.

**SO RECOMMENDED this 4th day of March, 2013.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

16