**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **AUDREY COLEMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 3:12-CV-04783-M-BH** |
| | ) | |
| **BANK OF NEW YORK MELLON et. al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order No. 3-251, this case has been automatically referred for pretrial management. Before the Court for recommendation is *Defendants Gabriel Ozel and Pite Duncan, LLP's Motion to Dismiss Pursuant to Rule 12(b)*, filed January 2, 2013 (doc. 24). Based on the relevant filings and applicable law, the motion should be **GRANTED in part and DENIED in part.**

**I.  BACKGROUND**

This case arises from foreclosure of real property located at 623 Sotogrande Street, Grand Prairie, Texas, 75051 (the Property). (doc. 3 at 3.) On November 21, 2012, Audrey Coleman (Plaintiff) filed this *pro se* suit against Bank of New York Mellon, as trustee for the Certificateholders of CWABS, Inc., Asset-backed Certificates, Series 2007-6 (Mellon), Bank of America, N.A. (BOA), Mortgage Electronic Registration Systems, Inc. (MERS), Recontrust Company, N.A. (Recontrust), Gabriel Ozel Pite Duncan, LLP,[1] Blank Rome Counselors at Law, LLP (Blank Rome), and Prudential Lone Star Realtors/Pat Watson-Capps, C.R.S. (Prudential). (*Id.* at 1–3.)

On March 2, 2007, Plaintiff purchased the Property with a mortgage loan from Countrywide

---

[1] Plaintiff incorrectly named Gabriel Ozel (Ozel) and Pite Duncan, LLP (Pite Duncan) as a single defendant. (*See* docs. 3 at 1; 16 at 14; 24-1 at 4.)

KB Home Loans, LLC (Countrywide).  (*Id.* at 3, 24.)  Plaintiff executed a promissory note and a deed of trust securing the note in Countrywide's favor.  (*Id.* at 23–38, 53–56.)  Both the note and deed of trust named Countrywide as "Lender."  (*Id.* at 24, 53.)  The deed of trust designated Mortgage Electronic Registration Systems, Inc. (MERS), as "the beneficiary" under the deed of trust and the nominee for Lender and its successors and assigns.  (*Id.* at 24.)  Pursuant to the deed of trust, MERS held legal title to the Property with power of sale on Borrower's (Plaintiff's) default.  (*Id.* at 25.)  MERS could also exercise any and all of the interests Borrower granted Lender, including releasing and canceling the deed of trust.  (*Id.*)  The loan could "be sold one or more times without prior notice to Borrower," which would "result in a change in the entity ... known as the 'Loan Servicer.'"  (*Id.* at 34.)  Borrower would be given "written notice of the change ... stat[ing] the name and address of the new Loan Servicer."  (*Id.*)

In late 2008, Plaintiff experienced financial difficulties and contacted Countrywide to inquire about its loan modification program.  (*Id.* at 3.)  She requested a loan modification from BOA in 2010, but BOA declined her application.  (*Id.* at 4.)  On April 22, 2011, Mellon mailed her a notice of her mortgage transfer effective March 23, 2011.  (*Id.* at 39.)  The notice stated that Mellon was the "new creditor" and BAC Home Loans Servicing, LP (BAC) was the new mortgage servicer.  (*Id.*)  On August 5, 2011, MERS, as nominee for Lender and its successors and assigns, assigned the note and deed of trust to Mellon.  (*Id.* at 41.)  Also that day, Mellon executed an "appointment of substitute trustee."  (*Id.* at 40.)  Both MERS's assignment and the appointment of substitute trustee were electronically recorded with the Dallas County Clerk on August 11, 2011.  (*See id.* at 40–41.)

In August 2011, Plaintiff contacted BOA and Reconstruct to request information about her loan.  (*Id.* at 4, 9–10.)  Reconstruct allegedly misinformed her regarding the date her mortgage was

assigned to Mellon and whether the Property was listed for foreclosure. (*Id.* at 10.) She sent a qualified written request (QWR) to both BOA and Reconstruct, and sent Reconstruct a request to validate the debt. (*Id.* at 4, 47.) Reconstruct purportedly failed to respond to her QWR and debt validation request. (*Id.* at 10.) She therefore does not know who owns her loan. (*Id.* at 5–6.)[2]

Mellon foreclosed on the Property in September 2011. (*Id.* at 65.) On February 10, 2012, a Dallas County Court at Law granted Mellon a "writ of possession." (*Id.* at 12, 51.) Plaintiff was served with Mellon's writ of possession on May 7, 2012. (*Id.* at 64.) On November 2, 2012, she wrote a letter to a Sergeant and a Deputy with the Dallas County Constable's Office, contending the notice to vacate was improper and advising them of her recent discharge in bankruptcy "which included the mortgage loan." (*Id.*) She also advised them of her pending suit against Mellon and the other Defendants in federal court and requested that they not go forward with her eviction, as that would violate her "civil rights." (*Id.* at 65–67.) On November 12, 2012, Plaintiff was evicted from the Property by law enforcement personnel from the Constable's Office. (*Id.* at 13–14.)

Based on the foreclosure and her subsequent eviction, Plaintiff expressly asserts claims for violations of her civil rights under 42 U.S.C. § 1983, negligent supervision, unjust enrichment, negligent misrepresentation, fraudulent misrepresentation, slander of title, suit to quiet title, and violations of the Fair Debt Collection Practices Act (FDCPA), the Real Estate Settlement Procedure Act (RESPA), and § 12.002 of the Texas Civil Practice and Remedies Code. (*Id.* at 15–20.) The complaint also lists claims for wrongful foreclosure and violations of the Truth in Lending Act

_____

[2] Plaintiff alleges the note was pooled with other notes and transferred into a securitization trust to be converted into saleable mortgage-backed securities. (doc. 3 at 5.) This allegedly changed the nature of the note from a negotiable instrument to a stock or bond regulated by the Securities and Exchange Commission (SEC). (*Id.*) Because the securitization "extinguished" the note, the the deed of trust is now "at best" "an unsecured debt instrument." (*Id.*) She also asserts that a party seeking "to enforce a debt obligation secured by a mortgage and note ... must be in possession of the note." (*Id.* at 6.) Plaintiff does not support any of her claims for relief with these allegations. (*See id.* at 15–22.)

(TILA), the Federal Trade Commission Act (FTCA), and the Fair Credit Reporting Act (FCRA). (*See id.* at 12–14, 19.)

On January 2, 2013, Ozel and Pite Duncan (Defendants) moved to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(1), (4)–(6).  (docs. 24, 24-1.)  With a timely filed response (doc. 40), the motion is now ripe for recommendation.

## II.  RULE 12(b)(1) MOTION

Defendants first seek dismissal under Rule 12(b)(1), contending that the Court lacks subject-matter jurisdiction over this case.  (doc. 24-1 at 3–4.)

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  Such a motion "may be raised by a party, or a by a court on its own initiative at any stage in the litigation, even after trial and the entry of judgment."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006).  The Court must dismiss the action if it determines that it lacks jurisdiction over the subject matter.  *See* Fed. R. Civ. P. 12(h)(3).

### A.    Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561

F.2d 606, 608 (5th Cir. 1977)).   This "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.   When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*.

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).   A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction.   *See Paterson v. Weinberger*, 644 F. 2d 521, 523 (5th Cir. 1998).   "If sufficient, those allegations alone provide jurisdiction." *Id*.   Facial attacks are usually made early in the proceedings. *Id*.   When evidence is presented with the motion to dismiss, the attack is "factual" and "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413.   A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

In this case, Defendants do not support their Rule 12(b)(1) motion with evidence.   They present a facial attack that does not require the Court to resolve matters outside the pleadings. *See Ramming*, 281 F.3d at 161; *Williamson*, 645 F.2d at 412–13.

B.     **Federal Question Jurisdiction**

Defendants argue that federal question jurisdiction under 28 U.S.C. § 1331 is lacking because

"Plaintiff's purported, federal law Section 1983 claim" has been dismissed.  (docs. 24-1 at 3; 14.)

A court has federal question jurisdiction when the plaintiff's claim arises under the Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. § 1331 (2005).  A claim arises under federal law when federal law creates the cause of action or when a state law claim raises a federal issue.  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *Singh v. Duan Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).  The party invoking federal question jurisdiction bears the burden of establishing its existence.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998); *accord Ramming*, 281 F.3d at 161.

Here, in addition to Plaintiff's claim under 42 U.S.C. § 1983, the complaint asserts claims for violations of §§ 1692e and 1692g of the FDCPA and § 2605(e) of RESPA.  (*See* doc. 3 at 8–10.)  Because some of Plaintiff's remaining claims arise under federal law, she has carried her burden to establish that federal question jurisdiction exists over this case.  Defendants' motion to dismiss under Rule 12(b)(1) should therefore be denied.[3]

### III.  RULE 12(b)(4) MOTION

Defendants next move for dismissal under Rule 12(b)(4) on grounds that process was insufficient because, despite being "two separate entities," Plaintiff improperly listed them as "one defendant under one summons."  (doc. 24-1 at 4.)

### A.   **Insufficient Process**

Rule 12(b)(4) allows a defendant to move for dismissal based on insufficient process.  *See* Fed. R. Civ. P. 12(b)(4).  In turn, Rule 4(b) provides that on or after filing the complaint, "the

---

[3]  Because Plaintiff has shown that the Court has federal question jurisdiction under 28 U.S.C. § 1331, it is not necessary to reach Defendants' argument regarding diversity jurisdiction under 28 U.S.C. § 1332.  (*See* doc. 24-1 at 3–4.)

plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed,[4] the clerk must sign, seal, and issue it to the plaintiff for service on the defendant." Fed. R. Civ. P. 4(b).  A summons, or a copy of a summons if addressed to multiple defendants, "must be issued for *each defendant* to be served." Fed. R. Civ. P. 4(b) (emphasis added).  The plaintiff bears the burden of proof regarding sufficiency of the process. *Lechner v. Citimortgage, Inc.*, 4:09-CV-302-Y, 2009 WL 2356142, at *1 (N.D. Tex. July 29, 2009); *see also* Fed. R. Civ. P. 4(c).

Plaintiff named "Gabriel Ozel Pite Duncan LLP" as a single defendant, and the Clerk issued and addressed a summons for the defendant as named.  (doc. 12 at 9.)  Defendants contend they are "separate entities" and therefore separate defendants in this action.  (*See* doc. 24-1 at 4.)  Plaintiff's failure to properly name Defendants on the summons and to ensure that a separate summons was issued for each defendant resulted in insufficient process.  *See*  Fed. R. Civ. P. 4(a)(1)(A), (b); *see also Neely v. Kitchings*, No. C/A 1:10-177-MBS-PJG, 2010 WL 4238852, at * (D.S.C. Sept. 23, 2010), *rec. adopted*, 2010 WL 4237309 (D.S.C. Oct. 20, 2010) (holding that the plaintiff's failure to ensure that summonses were issued for the defendants "resulted in insufficient process with regard to the individual defendants, providing an independent ground for dismissal under Federal Rule of Civil Procedure 12(b)(4)").

## B.     Prejudice

When process is insufficient, "federal courts have broad discretion to dismiss an action." *Chapman v. Trans Union LLC*, No. CIV.A. H-11-553, 2011 WL 2078641, at *1 (S.D. Tex. May 26, 2011) (citation omitted).  Nevertheless, "[d]efects in the summonses 'are not fatal if they do not

---

[4]   To be properly completed, among other things, the summons must "name ... the parties" to the action.  Fed. R. Civ. P. 4(a)(1)(A).

prejudice the defendant.'" *Pharmerica, Inc. v. DSJ Healthcare, Inc.*, No. 4:99-CV-242, 2010 WL 4962974, at *3 (E.D. Tex. Oct. 22, 2010), *rec. adopted*, 2010 WL 4955724 (E.D. Tex. Dec. 1, 2010) (quoting *Warfield v. Byron*, 137 F. App'x 651, 655 (5th Cir. 2005)); *accord Lechner*, 2009 WL 2356142 *1 (explaining that "absent a showing of prejudice to the defendant or evidence of flagrant disregard for the rules of procedure, a minor technical error does not justify dismissal") (internal quotations omitted).

Here, Defendants do not argue or indicate in any way that they were prejudiced by the defective summons.  (*See* doc. 24-1 at 4.)  Accordingly, their motion to dismiss for insufficient process under Rule 12(b)(4) should be denied.

## IV.  RULE 12(b)(5) MOTION

Defendants also move to dismiss under Rule 12(b)(5).  (doc. 24-1 at 5–6.)  They contend that Plaintiff's service by certified mail was improper because "process was not signed for by [Ozel] or by a registered agent of Pite Duncan" in contravention of Tex. R. Civ. P. 107(c).  (*Id.*)

Rule 12(b)(5) "permits a challenge to the method of service attempted by the plaintiff" or to the lack of service.  *See* Fed. R. Civ. P. 12(b)(5); *Tinsely v. Comm'r of I.R.S.*, No. 3:96-CV-1969-P, 1998 WL 59481, at *3 (N.D. Tex. Feb. 9, 1998).  Unless the defendant has been served with process in accordance with Fed. R. Civ. P. 4, a federal court lacks personal jurisdiction over the defendant. *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104 (1987); *Pavlov v. Parsons*, 574 F. Supp. 393, 399 (S.D. Tex. 1983).

Pursuant to Rule 4(e)(1), a plaintiff may serve process on a defendant who is an individual residing within a judicial district by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is

made." Fed. R. Civ. P. 4(e).  A "partnership" may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."  Fed. R. Civ .P. 4(h)(1)(A).  Under Texas law, any person authorized by Rule 103[5] may serve process by "mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto." Tex. R. Civ. P. 106(a)(2). The return receipt must be signed by the addressee for service to be effective.  Tex. R. Civ. P. 107(c); *Ayika v. Sutton*, 378 F. App'x 432, 434 (5th Cir. 2010) (per curiam); *Keeton v. Carrasco*, 53 S.W.3d 13, 19 (Tex. App.—San Antonio 2001, pet. denied).  The plaintiff has the burden to ensure that the defendants are properly served with a summons and a copy of the complaint.  Fed. R. Civ. P. 4(c)(1); *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992).

Here, Ozel is an individual, and Pite Duncan is a partnership.  (*See* doc. 24-1 at 5.)  Plaintiff attempted to effect service via certified mail pursuant to Fed. R. Civ. P. 4(e)(1) and Tex. R. Civ. P. 106(a)(2). (*See* doc. 16 at 13–16.)  The copy of the signed return does not show it was signed by either the addressee or the addressee's agent, since neither option was selected and the signature is illegible.  (*See id.* at 16.)  Moreover, given that "Gabriel Ozel Pite Duncan, LLP" is in actuality two distinct parties, it is not possible to determine on whose behalf the recipient signed.  Plaintiff's attempted service was therefore insufficient.  *See* Fed. R. Civ. P. 4(e)(1); *Ayika*, 378 F. App'x at 434 (finding that the plaintiff's "attempted service was insufficient under Rule 4" because the defendants' "signatures [did] not appear on the return receipts" as required by Tex. R. Civ. P. 107).

Rule 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint

---

[5]   In Texas, process "may be served anywhere by (1) any sheriff or constable or other person authorized by law, (2) any person authorized by law or by written order of the court who is not less than eighteen years of age, or (3) any person certified under order of the Supreme Court."  Tex. R. Civ. P. 103.

is filed, the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Ayika*, 378 F. App'x at 434 (citing Fed. R. Civ. P. 4(m)). When the 120-day deadline has not expired, the court may dismiss the action without prejudice for insufficient service of process so the plaintiff may effect proper service. *Grant-Brooks v. Nationscredit Home Equity Services Corp.*, No. 3:01-CV-2327, 2002 WL 424566, at *5 (N.D. Tex. Mar. 15, 2002). Alternatively, the court has discretion to quash service and give the plaintiff an additional opportunity to properly effect service. *Chapman*, 2011 WL 2078641, at *1; *Shabazz v. Service Employees Int'l Union*, No. 3:04-CV-229-M, 2004 WL 1585808, at *2 (N.D. Tex. July 13, 2004) (citation omitted). "[W]hen the time to effect service has expired," however, "the party attempting service has the burden of demonstrating 'good cause' for failure to serve the opposing party." *Kreimerman v. Casa Veerkamp*, 22 F.3d 634, 645 (5th Cir. 1994) (citation omitted); *Craddock v. Halverson*, No. 7:04-CV-020-R, 2004 WL 2381715, at *1 (N.D. Tex. Oct. 22, 2004); *see also* Fed. R. Civ. P. 4(m).

Here, the 120-day deadline for serving process has long expired. Consequently, Plaintiff must demonstrate "good cause" for her failure to properly serve process on Defendants. *See Kreimerman*, 22 F.3d at 645. In her response to Defendants' motion, Plaintiff asserts that she will effect service on Defendants via "certified mail return receipt requested" at their separate addresses. (*See* doc. 40 at 5.) As of the date of this recommendation, Plaintiff has yet to submit proof that Defendants were properly served. Plaintiff has not attempted to demonstrate good cause for her failure to effect proper service on Defendants. Nor has she requested additional time to properly serve Defendants. Dismissal without prejudice under Fed. R. Civ. P. 12(b)(5) is therefore proper. *See Craddock*, 2004 WL 2381715, at *4.

10

## V.  RULE 12(b)(6) MOTION

Defendants last move to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 24-1 at 6–7.)

### A.    Rule 12(b)(6) Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to

plead "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the miscon-
> duct alleged.  The plausibility standard is not akin to a "probability requirement," but
> it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where
> a complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the

line from conceivable to plausible, their complaint must be dismissed."  *Twombly*, 550 U.S. at 570;

*accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion.  *Spivey*,

197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with

a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude

the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*,

847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz  Franchise,

LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  "If . . . matters outside the pleading[s] are presented

to and not excluded by the court," however, "the motion must be treated as one for summary

judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the

material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint.

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley

Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Likewise, documents "attache[d] to a motion to

dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and

are central to her claim[s]."  *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs.*,

343 F.3d at 725.  It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  Documents falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Plaintiff has attached to the complaint copies of what she contends are the note and deed of trust, the notice of her mortgage transfer Mellon mailed her in April 2011, the appointment of substitute trustee, MERS's assignment to Mellon, public information she obtained about the substitute trustee, correspondence she received from the Texas Attorney General's Office in September 2011, BOA's acknowledgment of her QWR, her letter to the Constable's Office, and Mellon's writ of possession. (*See* doc. 3 at 23–78.)  These documents are considered part of the pleadings.  *See Katrina Canal Breaches Litig.*, 495 F.3d at 205.  Because the documents attached to the complaint are considered part of the pleadings, conversion of Defendants' motion to dismiss into a motion for summary judgment is unnecessary.  *See Norris*, 500 F.3d at 461 n. 9.

## B.    Federal Claims

Defendants contend that Plaintiff "makes no relevant factual allegations against [them] that could even remotely be considered as alleging any causes of action." (doc. 24-1 at 7.)  They claim Plaintiff's complaint "indiscriminately makes global allegations against 'Defendants'" but "wholly fails to identify any specific Defendant by name." (*Id.*)  Accordingly, they move to dismiss all of Plaintiff's claims for failure to state a claim.  (*Id.*)  Plaintiff expressly asserts claims against Defendants under 42 U.S.C. § 1983,[6] the FDCPA, and RESPA.  (doc. 3 at 7–10, 18–19.)  The

---

[6] Plaintiff asserted a claim under § 1983 for alleged violations of her civil rights relating to her eviction.  (doc. 3 at 15.) This claim was dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2) on December 4, 2012.  (*See* doc. 14.)

complaint also lists claims under TILA, the FTCA, and the FCRA. (*See id.* at 12–14, 19.)

### 1.      FDCPA

Plaintiff asserts claims against Defendants under §§ 1692e, 1692f , and 1692g of the FDCPA. (*See* doc. 3 at 8–10, 18.)

The FDCPA seeks "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." *Peter v. GC Servs. L.P.*, 310 F.3d 344, 351–52 (5th Cir. 2002) (citation omitted); *see also* 15 U.S.C. § 1692(e).  For instance, the FDCPA prohibits a debt collector[7] from making "false, deceptive, and misleading misrepresentations in connection with debt collection" and from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt."   15 U.S.C. §§ 1692e, 1692f.  The Act also requires a debt collector, within five days after its "initial communication with a consumer in connection with the collection of any debt," to provide the consumer with certain disclosures, including her right to dispute or request validation of the debt.  *See id.* § 1692g(a).  If the consumer disputes or requests validation of the debt in writing within 30 days after receiving the debt collector's initial communication, the debt collector must cease its collection activities until it verifies the debt.  *Id.* §1692g(b); *Peter*, 310 F.3d at 348.

Here, Plaintiff asserts that Reconstruct is a debt collector for purposes of the FDCPA. (doc. 3 at 10.)  She alleges that she sent Reconstruct a debt validation request in August 2011, but Reconstruct failed to respond, thereby violating § 1692g(b).  (*Id.* at 10, 18.)  She allegedly called Reconstruct on various occasions in August 2011 to inquire about her mortgage loan but was given

---

[7]  A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

conflicting information in violation of § 1692e.  (*Id.* at 10.)  She claims BOA, Mellon, and MERS

violated § 1692e by sending her "false correspondence."  (*Id.* at 18. )  "*All Defendants* engaged in

unfair and deceptive means" to collect a debt and threatened to unlawfully repossess the Property

in violation of § 1692f.  (*Id.*) (emphasis added).  She "is holding [BOA], Recontrust, [and] the *other*

*Defendants*" responsible for the damages she suffered as a result of Reconstruct's unlawful actions.

(*Id.* at 10) (emphasis added).

Plaintiff does not allege or assert any facts showing Defendants are debt collectors because

they are engaged "in any business the principal purpose of which is the collection of any debts" or

"regularly collect or attempt to collect . . . debts."  *See*  15 U.S.C. § 1692a(6).  She also fails to assert

any facts giving rise to a reasonable inference that these Defendants should be held liable for any

violations of the FDCPA by part of Reconstruct, BOA, MERS, or Mellon.  Plaintiff therefore fails

to state a claim for relief under the FDCPA against Defendants, and this claim against them should

be dismissed for failure to state a claim.

## 2.     *RESPA*

Plaintiff asserts a claim under § 2605(b) of RESPA for Defendants' alleged failure to notify

her of her mortgage transfer.  (doc. 3 at 7, 19.)

RESPA protects borrowers in part by prohibiting predatory practices in the lending and

servicing of federally-related mortgage loans.  *See*  12 U.S.C.A. §§  2601(a), 2605–2608 (West

2011); *Val-Com Acquisitions Trust v. Chase Home Fin. LLC*, 3:10-CV-1214-K, 2011 WL 1938146,

at *3 (N.D. Tex. May 19, 2011).  Section 6 of RESPA imposes two notice requirements: (1) at the

time of the credit application, the lender must disclose to the borrower that servicing of the loan may

be "assigned, sold, or transferred to any other person at any time while the loan is outstanding"; and

(2) a mortgage servicer must notify the borrower "of any assignment, sale or transfer of the servicing of the loan to any other person." *Hoover v. Wisecarver*, No. 3:03CV700JS, 2006 WL 2583735, at *3 (S.D. Miss. Sept. 7, 2006) (citing 12 U.S.C. § 2605(a)–(b)).

Here, Plaintiff complains that she was never "informed of a transfer of the Note to MERS" or of "any alleged Appointments, Assignments, [or] Transfers of the mortgage in violation of RESPA." (doc. 3 at 7, 19.)  Because Plaintiff does not allege that either Ozel or Pite Duncan were the lender or mortgage servicer, her sparse factual allegations fail to raise a reasonable inference that they were required to provide her with the requisite notices under § 2605(a)–(b), and much less that they failed to do so.  Accordingly, to the extent she asserts a claim under § 2605(a)–(b) of RESPA against these defendants, the claim fails and should be dismissed.[8]  *See Iqbal*, 556 U.S. at 678 (providing that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief) (citing *Twombly*, 550 U.S. at 555).[9]

## C.   **State Law Claims**

As noted, Defendants contend that "Plaintiff makes no relevant factual allegations against [them]" to state a plausible claim for relief.  (doc. 24-1 at 7.)  Plaintiff expressly asserts claims under state law for filing a "fraudulent lien" in violation of § 12.002 of the Tex. Civ. Prac. & Rem. Code,

---

[8]  As the original beneficiary under the deed of trust (the mortgagee), and as the nominee for Lender and its successors and assigns, MERS could enforce Lender's interests in the note and could even transfer the note to third parties by assigning the deed of trust. *See Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *2–3 (N.D. Tex. July 12, 2012); *see also* Tex. Prop. Code Ann. § 51.0001(4)(A) (defining mortgage, in relevant part, as "the grantee, beneficiary, owner, or holder of a security instrument") (doc. 3 at 24–25).  Moreover, Mellon's April 2011 notice to Plaintiff stated that her mortgage was transferred on March 23, 2011.  (doc. 3 at 39.)  It indicated that Mellon was the "new creditor" and BAC was the new mortgage servicer.  (*Id.*)  Accordingly, her claim under RESPA fails for these additional reasons.

[9]  Plaintiff also lists claims under TILA, the FTCA, and the FCRA.  (*See* doc. 3 at 12–14, 19.)  She refers to these claims by title only and does not assert any facts in support.  (*See id.*)  To the extent asserted, these claims also fail and should be dismissed.  *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (citing *Twombly*, 550 U.S. at 570.)

negligent supervision, negligent misrepresentation, fraudulent misrepresentation, slander of title, suit to quiet title, and unjust enrichment.  (doc. 3 at 15–20.)  Liberally construed, the complaint also asserts a claim for wrongful foreclosure.  (*See id.* at 12, 20.)

### 1.       *Fraudulent Lien*

Chapter 12 of the Texas Civil Practices and Remedies Code provides the elements of a claim for the filing of a fraudulent lien.  *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 3671–72 (5th Cir. 2012).  It provides, in relevant part:

> A person may not make, present, or use a document or other record with:
> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
> (3) intent to cause another person to suffer:
> (A) physical injury;
> (B) financial injury; or
> (C) mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a) (West 2005).

Plaintiff maintains that "[a]ll Defendants ... utilized documents or other records in the foreclosure of [the Property], with knowledge that the documents were fraudulent."  (doc. 3 at 15.) She claims this violated § 12.002(a) and seeks "exemplary damages in an amount determined by the court."  (*Id.* at 16.)  Plaintiff makes no allegations showing that either Ozel or Pite Duncan were involved in the foreclosure.  In her letter to the Constable's Office, she states that Mellon foreclosed on the Property on September 6, 2011.  (*Id.* at 65–66.)  The writ of possession issued by the County Court at Law in February 2011 shows Mellon was the only "plaintiff" in the forcible detainer action

17

against Plaintiff.  (*See id.* at 51, 61–62.)  Moreover, Plaintiff fails to identify the documents that were allegedly "fraudulent."  Nor does she allege or assert facts sufficient to show Defendants intended that any such documents have the "same legal effect as a valid lien" or that they intended to injure her or cause her mental anguish or emotional distress.  *See* Tex. Civ. Prac. & Rem. Code § 12.002(a).  Accordingly, she fails to state a plausible claim for filing a fraudulent lien against them, and the claim should be dismissed.

### 2.      *Negligent Misrepresentation*

A claim for negligent representation in Texas consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 762 (N.D. Tex. 2012) (citing *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005)).

Plaintiff asserts that Defendants engaged in "deceptive acts" and made a "multitude [of] misrepresentations," including misrepresenting "the true identity of [the] Lender."  (doc. 3 at 16.)  She claims she was reasonably induced "to enter into the transaction."  (*Id.*)  Plaintiff does not allege that Defendants failed to exercise reasonable care or competence in communicating with her or that she was damaged as a result.  Because her allegations are conclusory and devoid of any factual content, they fail to state a negligent misrepresentation claim that is plausible on its face.  *See Twombly*, 550 U.S. at 570.  Accordingly, this claim should be dismissed for failure to state a claim.

### 3.      *Fraudulent Misrepresentation*

In Texas, the elements of fraud by misrepresentation are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citation omitted).

Plaintiff contends that "Defendants fraudulently misrepresented [being] the true beneficial owner[s] of the Note" and carried out "a fraudulent foreclosure." (doc. 3 at 17.) Defendants' conduct "was [allegedly] a proximate cause of [her] damages." (*Id.*) As discussed, Plaintiff makes no allegations showing that either Ozel or Pite Duncan was involved in the foreclosure proceedings. The note she executed named Countrywide as "Lender." (*Id.* at 53.) MERS's assignment of the note and deed of trust identified Mellon as the assignee, and therefore the mortgagee. *See* Tex. Prop. Code Ann. § 51.0001(4)(C) ("if the security interest has been assigned of record," the mortgagee is "the last person to whom the security interest has been assigned of record"); (*see also* doc. 3 at 41). Ultimately, Plaintiff's fraud claim fails because she does not allege or assert facts sufficient to show Defendants made any misrepresentations *to her*, upon which *she justifiably relied* to her detriment. *See Huml v. Mortgage Elec. Registration Sys., Inc.*, No. EP-12-CV-00146-DCG, 2012 WL 5984821, at *5 (W.D. Tex. Oct. 25, 2012) (holding that the plaintiffs "fail[ed] to state a claim" for fraud under Rule 12(b)(6) because "the amended complaint nowhere state[d] facts to suggest that [the] Defendants used such [allegedly fraudulent] documents in connection with the alleged foreclosures

19

against them personally"); *Grisham v. Deutsche Bank Trust Co. Americas*, No. 4:11-CV-3680, 2012 WL 2568178, at *4 (S.D. Tex. June 28, 2012) (dismissing fraud claim for failure to state a claim where the plaintiff alleged that the defendant "committed fraud by manufacturing documentation to support its alleged ownership of the Note" but he did "not contend that [the defendant] made this material representation to *him*") (emphasis in *Grisham*).  Accordingly, Plaintiff's fraud claim against them should be dismissed under Rule 12(b)(6) for failure to state a claim.

###   4.   *Slander of Title*

In Texas, to prevail on a slander of title claim, a plaintiff must allege and prove: (1) the utterings and publishing of disparaging words; (2) the words were false; (3) the words were malicious; (4) the plaintiff sustained special damages; and (5) the plaintiff possessed an estate or interest in the property disparaged.  *Manders v. Manders*, 897 F. Supp. 972, 976 (S.D. Tex. 1995) (citations omitted).

Here, Plaintiff alleges that Defendants placed a "mortgage" i.e., a lien, on the Property for their benefit.  (doc. 3 at 17.)  She claims the public filing of such lien was a "wrongful publication" because Defendants had no valid interests in the Property.  (*Id.*)  As a result, she "incurred damages and will continue to incur costs related to this litigation."  (*Id.*)  Plaintiff fails to assert any facts raising a reasonable inference that Defendants placed a lien on the Property.  She simply fails to assert any facts supporting the elements of a slander of title action.  This claim against them is therefore subject to dismissal for failure to state a claim.

###   5.   *Quiet Title*

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property."  *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex.

App.—Houston [1st Dist.] 2011, no pet.). This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted). To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.). The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied). The plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Plaintiff claims to be "the [s]uperior [o]wner" and "legal [t]itleholder" of the Property. (doc. 3 at 17.) She asserts Defendants "knowingly and unlawfully caused a cloud to be recorded against" the Property. (*Id.*) Other than these conclusory allegations, Plaintiff fails to assert any facts giving rise to a reasonable inference that she has superior title to the Property. Also fatal to her claim is her failure to state facts sufficient to show Defendants asserted an invalid claim to the Property. Her quiet title claim against them should be dismissed because it is factually unsupported.

### 6.    *Negligent Supervision*

Under Texas law, the elements of a negligent supervision claim are: (1) the employer owed the plaintiff a legal duty to supervise his employees, (2) the employer breached that duty, and (3) the employer's breach proximately caused the plaintiff's injury. *Allison v. J.P. Morgan Chase Bank,*

*N.A.*, No. 1:11-CV-342, 2012 WL 4633177, at *16 (E.D. Tex. Oct. 2, 2012) (citations omitted).

Here, Plaintiff claims: (1) Defendants "had a duty" to supervise their employees and agents; (2) Defendants' employees engaged in "unlawful" actions and "violated" her property rights; (3) Defendants knew or "should have known" of their employees' unlawful conduct; and (4) she was "proximately injured" by the employees' conduct.  (doc. 3 at 19.)  Under *Twombly*, to state a claim for relief, Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Given her failure to do so with respect to her negligent supervision claim, this claim is likewise subject to dismissal.

### 7.    *Unjust Enrichment*

"Unjust enrichment occurs when the defendant wrongfully secures a benefit or passively receives a benefit [that] would be unconscionable to retain."  *Mora v. Koy*, No. CIV.A. H-12-3211, 2013 WL 2289887, at *5 (S.D. Tex. May 23, 2013) (citation omitted).  This theory "characterize[s] the result of the [defendant's] failure to make restitution of benefits under such circumstances as to give rise to an implied or quasi-contract to repay." *Id.* (citations omitted).

Liberally construed, the complaint alleges that Mellon, BOA, and MERS "have been unjustly enriched" by not paying recordation fees that MERS charges its "members" in exchange for "track[ing] [their] mortgage loan[s] and mortgage transfers."  (doc. 3 at 16.)  Because Plaintiff's allegations do not implicate Defendants, the allegations could not plausibly entitle her to relief against them.  Accordingly, this claim is also subject to dismissal.

### 8.    *Wrongful Foreclosure*

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings.  *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D.

Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)).  In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property."  *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011).  The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  *Hurd*, 880 F. Supp. 2d at 766 (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).  A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings."  *Matthews*, 2011 WL 3347920, at *2.  Recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be [a] [grossly] inadequate selling price resulting from the defect."  *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

Here, Plaintiff claims "all Defendants" conducted "a fraudulent foreclosure." (doc. 3 at 17.) In her request for injunctive relief, she asserts the Property "was wrongfully sold at a foreclosure sale." (*Id.* at 20.)  Although these allegations may be liberally construed as asserting a wrongful foreclosure claim, the allegations fail to state a viable claim against Defendants.  As discussed, Plaintiff asserts no facts to show these Defendants participated in the foreclosure proceedings or her eviction.  This claim against them should therefore be dismissed for failure to state a claim upon which relief can be granted.[10]

---

[10]   Any wrongful foreclosure action fails for the additional reason that Plaintiff does not make any allegations showing the Property was sold for a grossly inadequate price or a causal connection between a procedural defect and any grossly inadequate selling price.  *See Byrd v. Chase Home Fin. LLC*, No. 4:11-CV-022-A, 2011 WL 5220421, at *4 (N.D. Tex. Oct. 31, 2011) (dismissing wrongful foreclosure claim where the plaintiffs alleged there was a procedural defect but did

### 9. *Declaratory Judgment Action*

Plaintiff seeks declaratory relief under the Texas Declaratory Judgments Act (TDJA), codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.  (*See* doc. 3 at 20.)[11]

Because the TDJA is a procedural provision and does not apply to cases brought in federal court, Plaintiff's declaratory judgment action may be construed as arising under the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202.  *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012);  *Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012).

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C.A. § 2201 (West 2010).  The Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law."  *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted).  It is an authorization, not a command, and gives federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment.  *Id.*

Here, given Plaintiff's failure to state a viable claim for relief against Defendants, or show

---

not assert facts showing a grossly inadequate selling price resulted from the defect); *see also Pollett v. Aurora Loan Services*, 455 F. App'x 413, 415 (5th Cir. 2011) (per curiam) (affirming dismissal of wrongful foreclosure claim where the plaintiff "failed to allege ... a grossly inadequate selling price and a causal connection between a defect in the foreclosure sale proceedings and the grossly inadequate selling price").

[11]    Plaintiff requests declarations that the deed of trust and the foreclosure sale are "null and void" and that the bifurcation of the note and deed of trust rendered "unenforceable any interest in the Property [that] the Defendants [may] seek to enforce."  (doc. 3 at 20.)

that a genuine controversy exists between the parties, her declaratory judgment action should be dismissed. *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *see also Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *5–6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (declining to entertain the plaintiff's request for declaratory judgment where he had not factually pleaded a plausible substantive claim).[12]

## VI. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1. Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to

---

[12] Plaintiff also requests injunctive relief to gain "re-entry" to the Property and restrain Defendants "from enforcing the [allegedly] fraudulent foreclosure." (doc. 3 at 20.) This request was denied by the Court on March 22, 2013. (*See* docs. 39; 46 "Order Accepting Findings and Recommendation of the United States Magistrate Judge".) Even if considered, given Plaintiff's failure to plead a substantive claim for relief, she cannot obtain any injunctive relief against Defendants. *See Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (holding that to obtain injunctive relief, "[a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits'") (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).

a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has not amended her complaint since she filed this action on November 21, 2012. After removing Mellon's forcible detainer action to federal court on October 2, 2012, Plaintiff attempted to assert claims against Mellon by filing a document titled "complaint for writ of re-entry" on November 13, 2012. (*See* No. 3:12-CV-03971-D, docs. 3; 8 at 2–11.) Notably, this document listed factual allegations and claims for relief that were almost identical to those listed in her complaint in this action. (*See* doc. 3 at 3–21.) On November 29, 2012, the removed forcible detainer action involving Mellon was dismissed for lack fo subject matter jurisdiction. (*See* No. 3:12-CV-03971-D, doc. 20.) As noted, all of Plaintiff's claims are based on the foreclosure of the Property and her subsequent eviction. While attachments to the complaint show that Mellon was assigned her mortgage in August 2011 and obtained a favorable judgment in its forcible detainer action, the pleadings fail to assert any facts showing that Defendants were involved in the foreclosure or her eviction. Because it appears that she has stated her best case to the Court against Ozel and Pite Duncan, no further opportunity to amend is warranted as to these defendants.

## VII. RECOMMENDATION

Defendants' motions to dismiss under Rules 12(b)(5), (6) should be **GRANTED,** and their motions under Rules 12(b)(1), (4) should be **DENIED.** All of Plaintiff's claims against Ozel and Pite Duncan should be dismissed with prejudice for failure to state a claim.

**SO RECOMMENDED this 6th day of August, 2013.**


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE




## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

27