**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **AUDREY COLEMAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **vs.** | § | **Civil Action No. 3:12-CV-4783-M-BH** |
| | § | |
| **BANK OF NEW YORK MELLON et. al,** | § | |
| | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order No. 3-251, this case has been automatically referred for pretrial management. Before the Court is the *Motion to Dismiss Plaintiff's Amended Complaint by Defendants The Bank of New York Mellon, Bank of America, N.A., Mortgage Electronic Registration Systems, Inc., and ReconTrust Company, N.A.*, filed September 24, 2013. (doc. 79.) Based on the relevant filings and applicable law, the motion should be **GRANTED in part and DENIED in part**, and the plaintiff's claims for creation of a fraudulent lien under Tex. Civ. Prac. & Rem. Code § 12.002(a), fraudulent misrepresentation, negligent supervision, quiet title, unjust enrichment, and violations of FTCA, DTPA, RESPA, and FDCPA should be dismissed.

## I. BACKGROUND

This case arises from the foreclosure of real property located at 623 Sotogrande Street, Grand Prairie, Texas, 75051 (the Property). (Orig. Compl. (doc. 3) at 3.)[1] On November 21, 2012, Audrey Coleman (Plaintiff) filed this *pro se* suit against Bank of New York Mellon, as trustee for the Certificateholders of CWABS, Inc., Asset-backed Certificates, Series 2007-6 (BNYM), Bank of

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

America, N.A. (BANA), Mortgage Electronic Registration Systems, Inc. (MERS), Recontrust Company, N.A. (Recontrust), Gabriel Ozel, Pite Duncan, LLP, Blank Rome Counselors at Law, LLP, Prudential Lone Star Realtors, and Pat Watson-Capps, for claims relating to the foreclosure of her home, the Property.[2]  (*Id.* at 1–3, 12–14, 19.)  Plaintiff filed her first amended complaint on September 10, 2013.  (Am. Comp. (doc. 74).)

Plaintiff purchased the Property on March 2, 2007, with a mortgage loan from Countrywide KB Home Loans, LLC, BANA's predecessor.[3]  (doc. 79-2 at 3, 24.)  Plaintiff executed a promissory note and a deed of trust securing the note in BANA's favor.  (docs. 74 at 4–5; 79-2 at 2–25.)  The deed of trust designated Mortgage Electronic Registration Systems, Inc. (MERS), as "the beneficiary" under the deed of trust and the nominee for "Lender" and its successors and assigns. (doc. 79-2 at 3.)  Pursuant to the deed of trust, MERS held legal title to the Property with power of sale on Borrower's (Plaintiff's) default.  (*Id.* at 4.)  MERS could also exercise any and all of the interests Borrower granted Lender, including releasing and canceling the deed of trust.  (*Id.*)  The deed of trust also provided that the loan could "be sold one or more times without prior notice to Borrower," which would "result in a change in the entity . . . known as the 'Loan Servicer.'"  (*Id.* at 13.)  Upon such a transfer, Borrower would be given "written notice of the change . . . stat[ing] the name and address of the new Loan Servicer."  (*Id.*)

---

[2]   On September 4, 2013, the Court granted Gabriel Ozel's and Pite Duncan, LLP's motion to dismiss and dismissed with prejudice all of Plaintiff's claims against them. *See Coleman v. Bank of New York Mellon*, 969 F. Supp. 2d 736, 746–56 (N.D. Tex. 2013).

[3]   Given BANA's alleged status as Countrywide's successor by merger, Plaintiff's claims against Countrywide are considered as if they were asserted against BANA.  *See Enis v. Bank of Am., N.A.*, No. 3:12-CV-0295-D, 2012 WL 4741073, at *1 (N.D. Tex. Oct. 3, 2012) (Fitzwater, C.J.) ("Because BOA is BAC's successor by merger, the court will consider BAC's conduct as if it were BOA's in addressing [the plaintiff's] claims."); *see also* Tex. Bus. Orgs. Code Ann. § 10.008(a) (3), (5) (West 2011) (providing that "all liabilities and obligations" of the merged entity "are allocated to . . . the surviving" entity, and any judicial proceedings pending against the merged entity "may be continued as if the merger did not occur").

On May 28, 2011, Plaintiff purportedly "received a mortgage loan transfer disclosure notice from" BNYM.  (doc. 74 at 7.)  On August 5, 2011, MERS assigned the deed of trust to BNYM.  (doc. 79-3 at 2.)  Melanie D. Cowen, MERS's "assistant secretary," executed the assignment document on MERS's behalf.  (*Id.*)  Reconstruct recorded the assignment with the Dallas County Clerk's office a few days later.  (*Id.*)

Plaintiff disputes the assistant secretary's authority to assign the deed of trust.  (doc. 74 at 7–8, 11, 14.)  She claims that the assignment was "defective and fraudulent" because the assistant secretary's signature on the assignment document does "not match" any of the other documents that she executed in relation to "other mortgage loan holders."  (*Id.* at 8, 11.)  She also argues that the assistant secretary did not have "actual signing authority."  (*Id*. at 14.)  She asserts that MERS was not the Lender's nominee and could not assign the deed of trust because she, the "grantor," made no such nomination.  (*Id.* at 14.)

At some point, Plaintiff mailed a Qualified Written Request (QWR) to BANA, BNYM, and Reconstruct, requesting "proof of [] the true owner of her mortgage loan."  (*Id.* at 8.)  As of the date she filed suit, the information she requested "ha[d] not been provided to" her and the debt had not been "verified."  (*Id.*)  She also alleges that she unsuccessfully attempted to modify her loan with BANA on several occasions.  (*Id.* at 10.)  Although she was "told at least three times . . . that she [had been] approved for a loan modification," Defendants "unlawfully foreclosed" on the Property on September 6, 2011, and subsequently evicted her from it.  (*Id.*)[4]

---

[4]  Plaintiff also alleges that "two transactions" occurred at closing.  (doc. 74 at 5–6.)  In the first transaction, which related to the promissory note, a "Demand Deposit Account was opened" in her name with the Federal Reserve Board "to [avoid] paying taxes to the Internal Revenue Service[]."  (*Id.* at 6, 31.)  The other transaction required her to unknowingly "convey[] her property over to Defendant," as evidenced by the deed of trust.  (*Id.* at 7.)  She appears to dispute these transactions on grounds that she never received the loan proceeds.  (*See id.*)  Plaintiff also references a lawsuit filed by the Federal Trade Commission (FTC) against BANA.  (*Id.* at 27–28.)  Notably, she does not appear to base any of her claims for relief on any of these allegations.  (*See id.* at 18–31.)

The first amended complaint expressly asserts claims for creation of a fraudulent lien in violation of the Tex. Civ. Prac. & Rem. Code § 12.002(a), fraud, fraudulent misrepresentation, wrongful foreclosure, negligent misrepresentation, negligent supervision, unjust enrichment, suit to quiet title, slander of title, civil conspiracy, and violations of the Fair Debt Collection Practices Act (FDCPA), the Real Estate Settlement Procedure Act (RESPA), the Federal Trade Commission Act (FTCA), the Truth in Lending Act (TILA) and its implementing regulation, the Texas Deceptive Trade Practices Act (DTPA) (*Id.* at 8–9, 18–31.), and violation of the Privacy Act, 5 U.S.C. § 552(b)(4).  Plaintiff's complaint may also be liberally construed as asserting claims for civil conspiracy.  (*See* doc. 74 at 19 ("Defendants entered into this *conspiracy*"); 24  ("All Defendants working in this *civil conspiracy* of fraudulent and deceptive trade practices") (emphasis added)).  Plaintiff seeks declaratory relief, compensatory, special, and punitive damages, pre- and post-judgment interest, and court costs.  (*Id.* at 32–34.)

On September 24, 2013, BNYM, BANA, MERS, and Reconstruct (Defendants) moved to dismiss the complaint for failure to state a claim.  (docs. 79, 79-1.)  With a timely filed response (doc. 81), the motion is now ripe for recommendation.

## II.  RULE 12(b)(6) MOTION

Defendants move to dismiss Plaintiff's first amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (docs. 79, 79-1.)

## A.    Legal Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court

cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the

line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs.*, 343 F.3d at 725. It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

Plaintiff attached to the first amended complaint copies of a "Purchase Money Security Instrument," an "Adjustable Rate Note," the substitute trustee's deed, correspondence that BANA's counsel and Reconstruct sent to her in response to her alleged QWRs, and settlement documents

relating to a lawsuit between the FTC and BANA. (doc. 74-1 at 1–33.) These documents are considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205.

In addition, Defendants attached to their motion copies of what they contend are the deed of trust Plaintiff executed in March 2007, MERS's assignment of the deed of trust to BNYM in August 2011, and a letter BANA sent Plaintiff notifying her that BANA, Countrywide's "Parent Company," would be servicing her loan beginning July 1, 2011. (docs. 79-2--79-4.) These documents are referenced in Plaintiff's complaint and are central to her theory of the case; they are therefore considered part of the pleadings. *See Collins*, 224 F.3d at 499. Conversion of Defendants' motion to dismiss into a motion for summary judgment is unnecessary. *See id.*; *Katrina Canal Breaches Litig.*, 495 F.3d at 205.

## B.   <u>Assignment Claims</u>

Defendants contend that Plaintiff's claims for creation of a fraudulent lien under Tex. Civ. Prac. & Rem. Code § 12.002(a), fraudulent misrepresentation, wrongful foreclosure, negligent misrepresentation, negligent supervision, quiet title, slander of title, and violations of the FTCA and the DTPA are based on her theory that MERS's assignment was invalid.[5] Defendants argue that these claims are subject to dismissal because Plaintiff "lacks standing"[6] to challenge MERS's

---

[5] Plaintiff alleges that "the Deed of Trust was improperly assigned by MERS," and "MERS, despite being listed as a nominee on the Deed of Trust, was not empowered to make any Deed of Trust-related assignments or transfers." (doc. 79-1 at 5.)

[6] "Standing has both constitutional and prudential aspects." *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 460 n.9 (5th Cir. 2001) (citation omitted). The argument that a borrower lacks standing to challenge an assignment of his mortgage implicates prudential standing. Prudential standing encompasses "[j]udicially created limits" that concern whether: (1) a plaintiff's grievance falls within the zone of interests protected by the statute invoked, (2) the complaint raises a generalized grievance more properly addressed by the legislature, and (3) the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009); *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 (5th Cir. 2011).

assignment, and the claims fail as a matter of law.  (*Id.* at 6–7.)

Several district courts in Texas have held that "borrowers do not have standing to challenge the assignments to their mortgages because they are not parties to those assignments. *Kidd v. Fed. Nat. Mortg. Ass'n*, No. 3:12-CV-1733-B, 2013 WL 4900962, at *2 (N.D.Tex. Oct. 15, 2012) (collecting cases); *see also Metcalf v. Deutsche Bank Nat'l Trust Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *5 (N.D.Tex. June 26, 2012); *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp.2d 616, 623 (N.D.Tex. 2011) ("Plaintiffs do not have standing to challenge the assignments because they were not a party to those assignments.")(quoting *Eskeridge v. Fed. Home Loan Mortg. Corp.*, No. W-10-CA-285, 2011 WL 2163989, at *5 (W.D.Tex. Feb. 24, 2011).  Citing Texas law, however, some federal courts have recognized two exceptions:  (1) the obligor of an assigned "claim may defend [a] suit brought thereon on any ground which renders the assignment void, but ... not ... voidable," and (2) "under very limited circumstances, ... a defendant  sued on a negotiable instrument [may] assert defenses and claims held by others."  *Kramer v. Fannie Mae*, No. A-12-CA-276-SS, 2012 WL 3027990, at *4-5 (W.D. Tex. May 15, 2012) (citing to *Tri-Cities Const., Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.-Houston [1st Dist.] 1975, no writ) and Tex. Bus. & Com. Code § 3.305(c)); *see also Rodriguez v. Bank of Am., N.A.*, No. SA-12-CV-00905-DAE, 2013 WL 1773670, at *5 (W.D. Tex. Apr. 25, 2013); *Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012); *Miller v. Homecomings Fin., LLC*, No. 4:11-CV-04416, 2012 WL 3206237, at *5 (S.D. Tex. Aug. 8, 2012).   The Fifth Circuit has expressly adopted the first exception, stating "in Texas... an obligor cannot defend against an assignee's efforts to enforce [an] obligation on a ground that merely renders the

assignment voidable[7] at the election of the assignor," but an "obligor *may* defend on any ground which renders the assignment void." *Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013) (citing *Tri–Cities Const., Inc.*, 523 S.W.2d at 430; *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.)) (emphasis in original).  A debtor can challenge a void assignment "because a void assignment would not pass title, and the debtor has an interest to insure [*sic*] himself that he will not have to pay the same claim twice." *Washington v. JP Morgan Chase*, No. SA-11-CV-763-XR, 2013 WL 636054, at *8 (W.D. Tex. Feb. 20, 2013) (citation omitted); *accord Tri–Cities Const., Inc.*, 523 S.W.2d at 430.  With respect to the assignment of a mortgage, "[a] void contract of assignment confers no right to foreclose under the deed on the purported assignee while a voidable contract transfers the deed to the assignee—including the rights contained in it—subject to the rights of the assignor to set it aside upon proof [that] the contract was executed improperly." *Puente,* 2012 WL 4335997, at *6 n. 14 (citing to *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 674 (Tex. 1942)); *see also Glass*, 330 S.W.2d at 537 (distinguishing between a void and a voidable assignment).[8]

### 1.    Signatures *"Do Not Match"*

Plaintiff first alleges that MERS's assignment is defective and fraudulent because MERS's assistant secretary's alleged signature on the assignment does not match other mortgage documents that she has allegedly signed off on.  (doc. 74 at 7-8, 14.) The Fifth Circuit recently rejected an argument similar to Plaintiff's argument.  In *Reinagel*, the mortgagors argued that the assignment

---

[7]   "Examples of 'voidable' defenses include the statute of frauds, . . . fraud in the inducement, . . . lack of capacity as a minor, . . . and mutual mistake." *Miller*, 2012 WL 3206237, at *5; *see also* Tex. Bus. & Com. Code § 3.202(a) (listing voidable defenses against the enforcement of a negotiable instrument).

[8]   "This rule accords with [the] principle of contract law" that a "void contract is 'invalid or unlawful from its inception' and therefore cannot be enforced." *Rodriguez*, 2013 WL 1773670, at *5 (citing 17A C.J.S. Contracts § 169).

document was void as a forgery because the assignor's signature was simply scanned onto the document and then notarized as an original.  735 F.3d at 224.  The Fifth Circuit rejected that argument as a "red herring" because "Texas recognizes typed or stamped signatures–and presumably also scanned signatures–so long as they are rendered by or at the direction of the signer."  *Id*. at 227.  Since the mortgagors had not alleged that the signature was scanned without the signer's authorization, the Court found that they had not adequately alleged that the signature was a forgery.  *Id*. at 227-228.[9]

Here, Plaintiff simply alleges that the signatures on the assignment documents "do not match."  (doc. 74 at 7-8, 14.)  She does not allege that the signatures on the assignment documents were not the actual signatures of the assistant secretary, and she does not allege that the signatures were made without the assistant secretary's authorization. Even liberally construed in her favor and accepted as true, Plaintiff's allegation that the assistant secretary's signature does "not match," fails to raise a reasonable inference that she has standing to challenge MERS's assignment to BNYM. *See Molin v. Fremont Investment & Loan*, No. H-13-2394, 2013 WL 6732043, at *2 (S.D. Tex. Dec. 19, 2013) (holding plaintiffs lacked standing to challenge the assignment because they merely alleged that signatures on assignments were not the actual signatures of the signers and not that the signatures were affixed without the signers' authorization); *Lopez v. Sovereign Bank, N.A.,* No. H-13-1429, 2014 WL 1315834, at *7 (S.D. Tex. March 31, 2014) (holding plaintiffs lacked standing to challenge the assignment because they did not allege facts that, if true, would show the signer's signature was made without her authorization and was therefore a forgery); *Rodriguez*, 2013 WL 1773670, at *6 (holding Plaintiff lacked standing to challenge the assignment and "[e]ven if

---

[9]  Under Texas law, forgery is defined as "the making or altering of a written instrument purporting to be the act of another." *Reinagel*, 735 F.3d at 227 n. 22 (citing *Nobles v. Marcus*, 533 S.W.2d 923, 925–26 (Tex. 1976)).

[plaintiff]...had different signature variations, as long as MERS was aware of this and did not object to it, the assignment–though perhaps fraudulent–would not rise to the level of a forgery and thus would be voidable, not void").

### 2.     *Lack of Actual Signing Authority.*

Plaintiff also alleges that MERS's assignment was invalid, null and void because "MERS's signing officer did not have actual signing authority," she was "not authorized to execute such a conveyance," and she "was never appointed by the Board of Directors of MERS, Inc. as an Assistant Secretary." (doc. 74 at 14-15.)  As noted by the Fifth Circuit, a challenge of an assignment based on the signer's lack of authority only renders the assignment voidable, and therefore does not convey standing to challenge the assignment.  *See Reinagel,* 735 F.3d at 226 ("'[Texas] law is settled that the obligors of a claim...may not defend [against an assignee's effort to enforce the obligation] on any ground which renders the assignment voidable only,' [and so defendant's] lack of authority, even accepted as true, does not furnish the Reinagels with a basis to challenge the second assignment.") (citing *Tri-Cities Constr.*, 523 S.W.2d at 430; *Glass*, 330 S.W.2d at 537); *see also Van Duzer v. U.S. Bank Nat. Assoc.,* No. H-13-1398, 2014 WL 357878, at * 8 (S.D. Tex. Jan. 31, 2014) (finding plaintiffs' challenge of the assignment based on the signer's lack of authority would render the assignment voidable and did not furnish plaintiffs with a basis to challenge the assignment); *Howard v. J.P. Morgan Chase NA*, 2013 WL 1694659, at * 8 (W.D.Tex. Apr. 18, 2013) (finding plaintiff's allegations that the signer lacked authority to sign on behalf of MERS would render the assignment voidable and, therefore, plaintiff lacked standing to challenge the assignment); *Venegas v. U.S. Bank, Nat'l Ass'n,* No. SA-12-CV-1123-XR, 2013 WL 1948118, at *5 (W.D. Tex. May 9, 2013) (finding "[p]laintiffs' allegation that Krystal Hall and Melanie Cowan lacked authority to

11

execute the assignment documents, if true, would suggest that the assignments are merely voidable" and "[p]laintiffs do not have standing to challenge the assignments on that ground"). Accordingly, Plaintiff's allegation that the assistant secretary does not have the authority to sign the assignment does not give her standing to challenge MERS's assignment to BNYM.

### 3.   *Nominee Under the Deed of Trust*

Plaintiff lastly alleges that MERS's assignment was null and void because it was not the Lender's nominee and could not assign the deed of trust. (doc. 74 at 14.) She acknowledges that MERS is listed on the Deed of Trust as nominee, but claims that MERS "was not empowered to act as agent or nominee for its members, and was without specific written approval from principals and lacked the mandate to effectuate mortgage-related assignments, transfers or appointments of any kind." (*Id*.) Plaintiff also states that she, as grantor, did not nominate MERS. *Id*.

In *Kramer*, the court held that the plaintiff could not challenge the assignment of the deed of trust because neither of the two exceptions to the general rule that borrowers do not have standing to challenge the assignments of their mortgage applied.[10]  2012 WL 3027990, at *5. It found that in foreclosing on the plaintiff's property, the "Defendants did not sue [the plaintiff] at all, and even if they had, their suit would have been on the deed of trust, not the ...promissory note...[and] there [was] no suggestion [he] [was] being put in a position where he [would] have to pay the same claim twice." *Id*. As in *Kramer*, Plaintiff does not allege that Defendants actually sued her on the note or put her in a position where she will have to pay the same claim twice. Her conclusory allegations that MERS could not assign the deed of trust because MERS was not the nominee are not sufficient

---

[10]  The two exceptions cited by the *Kramer* court are: (i) an obligor of an assigned claim may defend a suit brought against him on any ground which renders the assignment void, and (ii) under very limited circumstances, a defendant sued on a negotiable instrument may assert defenses and claims held by others. *See Kramer*, 2012 WL 3027990, at *5.

to convey standing to challenge MERS's assignment to BNYM as a matter of law.

Even assuming Plaintiff has standing to challenge the assignment on the basis of this allegation, Texas law and the express terms of the deed of trust make clear that MERS had the authority to assign the deed of trust. Where the deed of trust expressly names MERS as a beneficiary and nominee for the lender, it has authority to assign the deed of trust. *See Lamb v. Wells Fargo Bank, N.A.*, 2012 WL 1888152, at *5 (N.D. Tex. May 24, 2012); *Dempsey v. U.S. Bank Nat'l*, 2012 WL 2036434, at *5 (E.D. Tex. Jun. 6, 2012) (citing *Eskeridge*, 2011 WL 2163989, at *5). MERS is defined in Texas Property Code § 51.0001(1) as a "book entry system," which is a "national book system for registering a beneficial interest in security instrument and its successors and assigns." *Richardson v. CitiMortgage, Inc.,* No. 6:10-cv-119, 2010 WL 4818556, at *5 *(E.D.Tex. Nov. 22, 2010)* (citing Tex. Prop. Code § 51.0001(1)). The MERS system is "designed to track transfers and avoid recording and other transfer fees that are otherwise associated with the sale" of a loan. *Id.* Mortgage documents, such as a deed of trust, provide for the use of MERS and the provisions in the documents are "enforceable to the extent provided by the terms of the documents." *Id.*

Here, the deed of trust states, "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." (doc. 79-2 at 3.) The deed of trust further states that MERS has the right to "exercise any or all of those interests [granted by plaintiff in the deed of trust], including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling [the deed of trust]." *Id.* Accordingly, MERS has the authority to transfer the rights and interests in the deed of trust to BNYM.

13

To the extent Plaintiff's claims for creation of a fraudulent lien, fraudulent misrepresentation, wrongful foreclosure, negligent misrepresentation, negligent supervision, quiet title, slander of title, and violations of the FTCA and the DTPA are based on her challenge to MERS's assignment, these claims are subject to dismissal for failure to state a claim.

## C.   <u>Wrongful Foreclosure</u>

In support of her claim for wrongful foreclosure, Plaintiff alleges that Defendants did not "have the original wet ink signature (Note) assigned them." (doc. 74 at 10).  In her response to Defendants' motion to dismiss, Plaintiff further alleges that "[n]one of the Defendants have claim over Plaintiff's Adjustable Rate Note."  (doc. 81 at 3.)

As Defendants point out in their reply, Plaintiff's allegation implicates the "show-me-the-note" theory.  *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *recommendation adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012). "Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure."  *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (citation and internal quotation marks omitted).  The theory has been repeatedly rejected in this circuit as having no merit. *Bennett*, 2012 WL 2864751, at *3; *see also Cervantes v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (collecting cases). "Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011).  Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property."  *Bierwirth v. BAC*

14

*Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.) (citation omitted).  In cases where the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument."  *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).  By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note." *Reardean*, 2011 WL 3268307, at *3.   Accordingly, Plaintiff's allegation that BNYM lacked authority to foreclose because "[n]one of the Defendants have claim over Plaintiff's Adjustable Rate Note" cannot support any claim against Defendants as a matter of law.  *See Islamic Ass'n of DeSoto, Texas, Inc. v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-0613-D, 2012 WL 2196040, at *2 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.).

To the extent Plaintiff's claim for wrongful foreclosure is based on the "show-me-the-note" theory, her claim is subject to dismissal for failure to state a claim.

## D.   Fraud, Wrongful Foreclosure, Negligent Misrepresentation, and Slander of Title

In addition to her allegations that the assignment is invalid and that Defendants did not have the original wet ink signature, Plaintiff appears to base her claims for fraud, wrongful foreclosure, negligent misrepresentation, and slander of title on her allegation that "Shelly Ortolani never signed the Notice of Substitute Trustee's Sale." (doc. 74 at 19, 21-22, 26.)  She also bases her wrongful foreclosure claim on grounds that Defendants were never "lawfully appointed as Trustee." (*Id.* at 21.)  She additionally bases her slander of title claim on allegations that "ReconTrust Co., N.A. falsely acted as Substitute Trustee or the agent of the beneficiary of the Deed of Trust or the agent of Bank of America, N.A. wrongfully and without privilege, caused a Notice of Substitute Trustee's

15

Sale to be recorded against subject property" (*Id*. at 26), and Defendants failed to provide her with proof of ownership through her QWR/VOD requests.  (*Id*. at 27.)  Defendants did not move to dismiss her claims for fraud, wrongful foreclosure, negligent misrepresentation, and slander of title to the extent they are based on these allegations.  Therefore, the motion to dismiss should be denied as to Plaintiff's claims for fraud, wrongful foreclosure, negligent misrepresentation, and slander of title.  **E.**      **Unjust Enrichment**

Defendants also argue that Plaintiff's claim for unjust enrichment fails because "an express contract" controls this action.  (doc. 79-1 at 8.)

In Texas, a plaintiff may recover for unjust enrichment if the defendant "has obtained a benefit from [him] by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  In essence, an unjust enrichment claim "characterize[s] the result of the [defendant's] failure to make restitution of benefits under such circumstances as to give rise to an implied or quasi-contract to repay."  *Coleman v. Bank of New York Mellon*, No. 3:12-CV-04783-M-BH, 2013 WL 4761111, at *14 (N.D. Tex. Sept. 4, 2013) (citations omitted) (alterations in *Coleman*).  Nevertheless, "there can be no recovery for unjust enrichment under a quasi-contract or contract implied-in-law theory when a valid, express contract covers the subject matter of the parties' dispute." *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M BH, 2013 WL 497883, at *6 (N.D. Tex. Jan. 16, 2013), *rec. adopted*, 2013 WL 500511 (N.D. Tex. Feb. 11, 2013) (citation omitted).

Here, Plaintiff claims that Defendants "have been unjustly enriched" by not paying the recordation fees that MERS usually charges its "members" for "track[ing] [their] mortgage loan[s] and mortgage transfers."  (doc. 71 at 24.)  Even assuming for purposes of this motion that Plaintiff's

allegations are true, her claim for unjust enrichment fails and should be dismissed because the deed of trust, an "express contract" that Plaintiff admits to have executed, governs this action. *See Bircher v. Bank of New York Mellon,* 4:12–CV–171–Y, 2012 WL 3245991, at *6 (N.D. Tex. Aug. 9, 2012) (holding that "[t]he deed of trust and note preclude[d] a cause of action against [the foreclosing] Defendants for unjust enrichment") (citations omitted).

## F.    RESPA

According to Defendants, "Plaintiff does not and cannot plead any cognizable cause of action under RESPA" because (1) she concedes that BNYM mailed her a notice of assignment and (2) Defendants were not required to notify her of a change in mortgage servicers because her own pleadings show there was no such change. (doc. 79-1 at 9–10.)

RESPA protects borrowers in part by prohibiting predatory practices in the lending and servicing of federally-related mortgage loans. *See* 12 U.S.C.A. §§ 2601(a), 2605–2608 (West 2011); *Val-Com Acquisitions Trust v. Chase Home Fin. LLC*, 3:10-CV-1214-K, 2011 WL 1938146, at *3 (N.D. Tex. May 19, 2011). Section 6 of RESPA imposes two notice requirements: (1) at the time of the credit application, the lender must disclose to the borrower that servicing of the loan may be "assigned, sold, or transferred to any other person at any time while the loan is outstanding"; and (2) a mortgage servicer must notify the borrower "of any assignment, sale or transfer of the servicing of the loan to any other person." *Hoover v. Wisecarver*, No. 3:03CV700JS, 2006 WL 2583735, at *3 (S.D. Miss. Sept. 7, 2006) (citing 12 U.S.C. § 2605(a)–(b)).

In the section relating to her RESPA claims, Plaintiff complains that she was never informed of MERS's assignment of her mortgage to BNYM and "was never notified of the transfer of servicing rights." (doc. 74 at 29.) She states in the facts section that on May 28, 2011, she received

from BNYM correspondence titled "Mortgage Loan Transfer Disclosure Notice." (*See id.* at 7.) This allegation negates any inference that she was never informed of MERS's assignment of her mortgage to BNYM.  Accordingly, she fails to state a plausible RESPA claim on this basis.

Plaintiff also asserts in the factual summary that she received her "monthly mortgage statements" from BANA since the date of closing.  (*Id.* at 6.)  BANA purportedly collected her payments and deposited them into the "demand deposit account" that was opened in her name with the Federal Reserve Board.  (*Id.* at 6–7.)  She claims that in October 2008, she attempted to modify her loan with BANA, the mortgage servicer.  (*Id.* at 10.)  Notably, the substitute trustee's deed shows that BANA was the mortage servicer as of September 6, 2011, the date of the foreclosure sale. (doc. 74-1 at 29.)  In light of Plaintiff's own allegations and the substitute trustee's deed, the complaint fails to raise a reasonable inference that there was a change in mortgage servicers that triggered the requisite notice under § 2605 of RESPA.[11]

Because the allegations fail to state a plausible claim that Defendants violated § 2605 of RESPA, this claim should be dismissed.  *See Iqbal*, 556 U.S. at 678 (providing that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief) (citing *Twombly*, 550 U.S. at 555).

## G.    FDCPA

Defendants lastly argue that Plaintiff's claims under the FDCPA are subject to dismissal because her allegations fail to raise a reasonable inference that Defendants are "debt collectors" for

---

[11] Plaintiff's RESPA claim also fails because the notice BANA sent her explaining that as of July 1, 2011, BANA, the surviving "parent company," would service her loan instead of Countrywide, the merged entity, negates any inference that she did not receive notice regarding any changes in the servicing of her loan. (*See* doc. 79-4 at 4); *see also* Tex. Bus. Orgs. Code Ann. §10.008(a) (3), (5) (providing that "all liabilities and obligations" of the merged entity "are allocated to . . . the surviving" entity).

18

purposes of the Act.[12]  (doc. 79-1 at 9–10.)

Plaintiff asserts claims against Defendants under § 1692e(8) for "communicat[ing] false credit information to others and fail[ing] to communicate that the alleged debt was disputed"; § 1692f for "engag[ing] in unfair and deceptive means and attempts to collect on [a] debt" and for attempting to "collect [a] debt in a manner and amount [that was] not authorized by the original note"; and § 1692g(b) for Defendants' purported failure to validate the debt.  (doc. 74 at 30–31.)

The purpose of the FDCPA is "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors."  *Peter v. GC Servs. L.P.*, 310 F.3d 344, 351–52 (5th Cir. 2002) (citation omitted); *see also* 15 U.S.C. § 1692(e); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010).  Among other things, the FDCPA prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," and "us[ing] unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C.A. §§ 1962e(8), 1962f (West 2011).  The Act also requires a debt collector, within five days after its "initial communication with a consumer in connection with the collection of any debt," to provide the consumer with certain disclosures concerning her rights to dispute the debt or request validation of the debt.  *Id.* § 1692g(a).  If the consumer disputes or requests validation of the debt,

---

[12]  Defendants also contend that Plaintiff's FDCPA claims are barred by the statute of limitations.  (doc. 79-1 at 9–10.) Claims under the FDCPA must be "brought . . . within one year from the date on which the violation occurs."  15 U.S.C.A. § 1692k(d) (West 2011); *Martin v. Grehn*, 546 F. App'x 415, 420 (5th Cir. 2013) (per curiam) ("There is a one year statute of limitations under the FDCPA.").  Courts have held that to calculate the limitations period, "discrete violations of the FDCPA should be analyzed on an individual basis."  *Arvie v. Dodeka, LLC*, No. CIV.A. H-09-1076, 2010 WL 4312907, at *10 (S.D. Tex. Oct. 25, 2010) (listing cases); *accord Barlow v. Safety Nat. Cas. Corp*, No. 3:11-CV-00236-BAJ, 2014 WL 1327922, at *2 (M.D. La. Mar. 31, 2014) (citation omitted).  Here, Plaintiff alleges generally that Defendants violated the FDCPA by attempting to collect on a debt that had already been paid, and without first verifying the debt.  (*See* doc. 74 at 30–31.)  Because she does not specify the date(s) on which Defendants' "discrete violations" occurred, it is unclear from the face of the complaint when the limitations period began to run.

… 

the debt collector must "cease collection of the debt ... until the [requested information] is mailed to the consumer." *Id.* § 1692g(b).

The Act defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6).  There are two categories of debt collectors:  those who collect debts as the "principal purpose" of their business, and those who collect debts "regularly." *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008).  Notably, the Act exempts from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt *which was originated by such person.*" 15 U.S.C. § 1692g(a)(6)(F) (emphasis added).  Pursuant to this exception, courts have concluded that "[t]he term 'debt collector' does not include lenders[,] . . . the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Gipson v. JPMorgan Chase*, No. 3:13-CV-2477-L, 2013 WL 3746003, at *2 (N.D. Tex. July 17, 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208, *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir. 1985)).

Here, Plaintiff asserts that Reconstruct violated the FDCPA by "misrepresenting the character and legal status of [the] debt" and by attempting to collect a debt that had "been paid in full." (doc. 74 at 30.)  Although she "disputed" the debt, Reconstruct purportedly "communicated false credit information to others and failed to communicate that the alleged debt was disputed." (*Id.*)  It allegedly "engaged in unfair and deceptive" practices by seeking to collect on the debt "in a manner" that was "not authorized by the original note." (*Id.* at 31.)  Nevertheless, Plaintiff's failure to allege or assert any facts raising a reasonable inference that Reconstruct collects debts as

the "principal purpose" of its business or that it collects debts "regularly" is fatal to her FDCPA

claim against this defendant.  *See Hester*, 289 F. App'x at 41.

Plaintiff also claims that BNYM, BANA, and MERS "executed an unlawful foreclosure" and

"never bothered to verify . . . the alleged debt." (*Id.* at 30.)  As with Reconstruct, however, Plaintiff

fails to assert any facts indicating that the "principal purpose" of these defendants' business is to

collect debts or that they collect debts "regularly."  *See Hester*, 289 F. App'x at 41.  The copy of the

promissory note attached to the complaint shows that BANA was the "lender," thereby indicating

that this defendant "originated" the loan in question.  *See* 15 U.S.C. § 1692g(a)(6)(F) (*see also* doc.

74-1 at 18).  Moreover, although the assignment document indicates that BNYM acquired Plaintiff's

mortgage in August 2011, she does not assert, and nothing in the pleadings indicates, that the debt

was in default at that time.  *See Gipson*, 2013 WL 3746003, at *2.  Lastly, Plaintiff does not allege

that MERS ever owned or even attempted to collect the debt.  (*see* doc. 74 at 1–36.)

In sum, without sufficient facts in support, Plaintiff's allegations fail to raise a reasonable

inference that Defendants were debt collectors for purposes of the FDCPA.  Accordingly, her

FDCPA claims fail to meet the applicable pleading standards and should be dismissed.  *See Garcia*

*v. Jenkins/Babb LLP*, No. 3:11–CV–3171–N–BH, 2012 WL 3847362, at *6–7 (N.D. Tex. July 31,

2012), *rec. adopted*, 2012 WL 3846539 (N.D. Tex. Sept.5, 2012) (dismissing FDCPA claims after

finding that the plaintiffs' recitation of the statutory language, without any facts in support, was

insufficient to plausibly allege that the defendants were "debt collectors" under the Act); *see also*

*Iqbal*, 556 U.S. at 678 (to state a claim, a plaintiff must plead sufficient facts to make the claim

"plausible on its face"); *Guidry*, 954 F.2d at 281 (well-pleaded facts are needed to avoid dismissal).

## IV. RECOMMENDATION

Defendants' motion to dismiss should be **GRANTED in part** and **DENIED in part**, and

Plaintiff's claims against them for unjust enrichment, creation of a fraudulent lien under the Tex. Civ. Prac. & Rem. Code § 12.002(a), fraudulent misrepresentation, negligent supervision, quiet title, and violations of FTCA, DTPA, RESPA, and FDCPA should be dismissed with prejudice. Plaintiff's remaining claims for fraud, wrongful foreclosure, negligent misrepresentation, slander of title, civil conspiracy, declaratory judgment, violations of TILA and Regulation Z, and the Privacy Act remain pending for trial.[13]

**SO RECOMMENDED this 19th day of June, 2014.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[13] Defendants' motion to dismiss does not address Plaintiff's conspiracy claims or her Privacy Act claims, if any. (*See* doc. 79-1 at 3–4.) (listing 12 of Plaintiff's 14 claims). Defendants' motion to dismiss also does not address Plaintiff's declaratory judgment claim. (*See* doc. 79 at 31-33.) These claims therefore also remain pending.